IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

MICHAEL LOUIS BRISCO,           )
ID # 1074236,                   )
      Petitioner,              )
vs.                             )      No. 3:04-CV-1241-P (BH)
                                )              ECF
NATHANIEL QUARTERMAN,[1] Director, )   Referred to U.S. Magistrate Judge
Texas Department of Criminal      )
Justice, Correctional Institutions Division, )
      Respondent.             )

FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE

Pursuant to the provisions of 28 U.S.C. § 636(b) and an Order of the Court in implementa-

tion thereof, subject cause has previously been referred to the United States Magistrate Judge.  The

findings, conclusions, and recommendation of the Magistrate Judge are as follows:

## I.  BACKGROUND

### A.  Nature of the Case

Petitioner, an inmate currently incarcerated in the Texas Department of Criminal Justice -

Correctional Institutions Division (TDCJ-CID), filed the instant petition for writ of habeas corpus

pursuant to 28 U.S.C. § 2254 to challenge his conviction for murder in Cause No. F01-73362-PS.

Respondent is Nathaniel Quarterman, Director of TDCJ-CID.

### B.  Procedural and Factual History

In early 2001, the State indicted petitioner for the October 5, 2000 murder of Tarria

Newsome in Dallas County; the indictment sought enhanced punishment based on two prior felony

---

[1] On June 1, 2006, Nathaniel Quarterman became the Director of the Texas Department of Criminal Justice - Correctional Institutions Division.  The Court thus substitutes him for Douglas Dretke.  *See* Fed. R. Civ. P. 25(d)(1).

convictions.  CR[2] at 2-4 (indictment).  In October 2001, defense counsel filed several motions on

petitioner's behalf.  *Id.* at 8-26 (showing eight filed motions, including one for discovery and one for

obtaining evidence favorable to petitioner).  On November 12, 2001, petitioner entered into an

agreement with the State whereby he would plead guilty to murder and true to the two enhancement

paragraphs in exchange for an agreed twenty-five year sentence.  *Id.* at 28 (plea agreement).

Petitioner, his attorney, an Assistant District Attorney, and the trial judge each signed the plea

agreement document, which included sections entitled "Court's Admonitions to Defendant",

"Defendant's Statements and Waivers", and "Signatures and Acknowledgments".  *Id.* at 28-29.

Within the plea agreement, the trial court informed petitioner that he was charged with

murder – a first degree felony that carried a range of punishment from five years to life imprisonment

and an optional fine not to exceed $10,000.  *Id.* at 28.  The form also informed petitioner of his

constitutional rights, including the right to a jury trial, to confront and cross-examine witnesses

against him, and call witnesses on his behalf.  *Id.*  The Defendant's Statements and Waiver section

of this form provided:  "I understand the nature of the accusation made against me, the range of

punishment for such offense, and the consequences of a plea of guilty or *nolo contendere*."  *Id.* at 29.

That section also indicated that petitioner understands his constitutional rights and waives them.

*Id.*  That section further stated:  "I affirm that my plea and judicial confession are freely and volun-

tarily made, and not influenced by any consideration of fear, persuasion, or delusive hope of pardon

or parole."  *Id.*  The Acknowledgment section of the form stated:  "I, the defendant herein, acknow-

ledge that my attorney has explained to me, and I have read and I understand, all the foregoing

---

[2]  "CR" refers to the Clerk's Record in Cause No. F01-73362.

admonitions and warnings regarding my rights and my plea, and that my statements and waivers are freely and voluntarily made with full understanding of the consequences." *Id.* The form further indicated that defense counsel had consulted with petitioner concerning his plea, and that counsel had advised petitioner of his rights. *Id.*

On the same date as his plea agreement, petitioner signed a Judicial Confession whereby he confessed that, on October 5, 2000, in Dallas County, Texas, he

> unlawfully then and there intentionally and knowingly cause[d] the death of [the complainant, Tarria Newsome], an individual, by shooting said [complainant] with a firearm, a deadly weapon.
>
> And unlawfully then and there intend[ed] to cause serious bodily injury to [the complainant] and did then and there commit an act clearly dangerous to human life, to-wit: by shooting said [complainant] with a firearm, a deadly weapon, and did thereby cause the death of [the complainant], an individual.

*Id.* at 30.

Prior to accepting petitioner's plea, the trial court questioned petitioner as to his understanding of the agreement and of its voluntariness. *See* Rep.'s R., Vol. I at 5-9 [hereinafter cited as RR-volume # at page]. The court informed petitioner that, after factoring in the two enhancement paragraphs, the punishment for his murder offense ranged from twenty-five years to life imprisonment with an optional fine not to exceed $10,000. *Id.* at 5. Petitioner affirmatively stated that he understood the range of punishment, that the trial court could accept his plea solely on his judicial confession, his guilty plea would limit his appellate rights, and he was to receive a twenty-five year sentence in exchange for his plea. *Id.* at 5-6. After the oral admonishments, petitioner expressed his desire to proceed with his plea. *Id.* at 7. The court thereafter accepted petitioner's plea, found it "freely and voluntarily made", found sufficient evidence to support the plea, and orally sentenced

3

him to twenty-five years imprisonment consistent with the plea agreement. *Id.* at 8-9. That same date, the trial court entered a written judgment on petitioner's plea wherein it memorialized petitioner's guilty plea and its oral sentence. *See* CR at 33.

On December 10, 2001, petitioner filed a *pro se* Notice of Appeal wherein he specifically stated that his attorney misled him and that he was "not guilty of murder". *Id.* at 38-39. On June 25, 2002, the court of appeals dismissed his appeal for want of jurisdiction because petitioner had not complied with Tex. R. App. P. 25.2(b)(3). *See Brisco v. State*, No. 06-02-00028-CR, unpub. op. at 1-2 (Tex. App. – Texarkana June 25, 2000, no pet.).

On February 5, 2003, petitioner filed a state petition for writ of habeas corpus. S.H. Tr.[3] at 2. He therein claimed that he was unlawfully induced to plead guilty by lies from his attorney regarding the evidence the State had against him. *Id.* at 8. He further claimed that his conviction was obtained by use of a coerced confession when his attorney told him to answer "yes" to the court's questions or he would get two life sentences.[4] *Id.* He also claimed that the prosecutor withheld favorable evidence from him and that his attorney rendered ineffective assistance. *Id.* at 9. In a summary of the facts of his claims, he asserted that his attorney (1) tricked him into pleading guilty; (2) told him that he would get two life sentences if he did not plead; and (3) told him "that some guy,

---

[3] "S.H. Tr." denotes the state habeas records attached to *Ex parte Brisco*, No. 53,391-03, slip op. (Tex. Crim. App. Mar. 24, 2004). Petitioner also filed two prior state applications for writ of habeas corpus that the Texas Court of Criminal Appeals dismissed for procedural irregularities. *See Ex parte Brisco*, No. 53,391-01, slip op. (Tex. Crim. App. Sept. 18, 2002) (dismissing application due to pending appeal); *Ex parte Brisco*, No. 53,391-02, slip op. (Tex. Crim. App. Jan. 15, 2003) (dismissing application due to non-compliance with appellate rules).

[4] The second life sentence was for a drug offense to which Petitioner also pled guilty but which has no significant relevance to the instant action .

by the name of Claude Marshall, whom I do not know and have never seen or never been with, signed a statement against me, saying that he saw me kill Ms. Newsome".[5]  *Id.* at 5.

The trial court appointed counsel to assist petitioner in the preparation of a state application for writ of habeas corpus "regarding the involuntariness of his guilty plea and actual innocence to his conviction for murder."  *See id.* at 33 (motion to withdraw explaining scope of appointment of counsel).  After reviewing the complete record in this case and spoke to petitioner, his mother, and his trial attorney, habeas counsel concluded that petitioner's state writ was wholly frivolous within the meaning of *Anders v. California*, 386 U.S. 738 (1967).  *Id.* at 34-42.  Counsel found no merit to petitioner's allegations of involuntary plea, ineffective assistance of counsel, coerced confession, and actual innocence.  *Id.* at 35-42.  Habeas counsel summarized his interview with trial counsel:

> [Counsel] states that the reason Applicant[6] pled guilty had to do with a witness [counsel] had interviewed.[7]  The witness provided an exculpatory statement in Applicants [sic] other pending case that claimed he had left the drugs the police found in the Applicant's car.  On the day of the plea, [counsel] told the Applicant that the Assistant District Attorney had informed him that this witness had changed his story after he was arrested and had given a statement to the homicide investigator that not only was he not responsible for the drugs, but that the Applicant had put him up to accepting responsibility for the drugs. [Counsel] said that this witness then turned over a letter that the Applicant had written to the homicide investigator. This letter written by the Applicant contained an admission that the Applicant had committed the murder.  According to [counsel], it was then that Applicant admitted to the murder and wanted to call his mother to explain why he needed to plead the

---

[5] An "Offender Information Search" on the TDCJ website shows that Claude Marshall was sentenced to two twenty-five year sentences on June 3, 2002, for Dallas County murders that took place on October 5, 2000, (Cause No. F01-73342-PWSN), and October 31, 2000, (Cause No. F01-74865-KN).

[6]  Rogers identifies petitioner as "Applicant" in his motion to withdraw.

[7]  Rogers does not initially identify the witness, but later characterizes the witness as "an alleged accomplice" and states that petitioner told him that "he has met a person by the same name as his accomplice in prison who does not know him." *See* S.H. Tr. at 39.  Still later, Rogers identifies the State's witness as "Claude Marshall".  *See id.* at 41.

case. Whereupon, [counsel] arranged for the Applicant to have a cell phone in the
hold over so that he could call his mother. The Applicant then entered his plea.

In addition, [counsel] states that he interviewed witnesses in preparation for
trial in this matter and coordinated with the family regarding being witnesses at trial.
Also, at the Applicant's request, he set up a polygraph with the police.

[Counsel] said he did inform the Applicant that he would probably receive
a life sentence if he went to trial.

*Id.* at 35-36.

On February 3, 2004, the trial court entered findings of fact and conclusions of law regarding
petitioner's state application for writ of habeas corpus. *Id.* at 44-51. The court found that petition-
er's plea "was not coerced nor his counsel ineffective even assuming that [trial counsel] told
[petitioner] the jury would give him life if he went to trial." *Id.* at 46. Because it found that further
investigation would not have "led one to believe there would have been a different outcome had
there been a trial", it found no merit to petitioner's claim that trial counsel did not investigate his
case. *Id.* at 47-48. With respect to petitioner's claim of actual innocence, it found no new evidence
which "unquestionably establish[es] the Applicant's innocence." *Id.* at 50. With respect to
petitioner's suppression claim, the trial court conducted an in camera review of the State's file
against petitioner, and specifically found that the file contains no exculpatory evidence and the State
indeed had a witness, Claude Marshall, who saw petitioner commit the murder. *Id.* at 50-51.

On March 24, 2004, the Texas Court of Criminal Appeals denied petitioner's state appli-
cation for writ of habeas corpus without written order on findings of the trial court without a hear-
ing. *Ex parte Brisco*, No. 53,391-03, slip op. at 1 (Tex. Crim. App. Mar. 24, 2004).

Petitioner filed the instant petition on May 27, 2004, when he placed it in the prison mail
system. (Pet. at 9); *see also Coleman v. Johnson*, 184 F.3d 398, 401 (5th Cir. 1999) (recognizing that

prisoners file their federal pleadings when they place them in the prison mail system).  On July 12, 2004, the Court received petitioner's answers to questions propounded to him.  (*See* Answers to Magistrate Judge's Questionnaire (MJQ).)  On September 27, 2004, the Court received a motion wherein petitioner sought leave to add new evidence of his innocence in the form of five unnotarized affidavits related to his whereabouts on the date of the murder for which he pled guilty.  On November 10, 2004, the Court accepted the affidavits as a supplement to his federal petition.

On April 13, 2005, respondent filed its answer and provided the state-court records.  (*See* Answer.)  Petitioner thereafter filed objections to the answer.  (Petr. Obj'ns, Rebuttal, and Answer [hereinafter referred to as Reply].)

## C.  Substantive Issues

Petitioner raises the following claims in this action:  (1) involuntary plea; (2) suppression of evidence; (3) ineffective assistance of counsel resulting from failures to (A) properly investigate the facts, (B) obtain rulings on filed pre-trial motions, and (C) properly communicate with him, as well as (D) coercing him to plead guilty due to the suppression of evidence; and (4) actual innocence.[8] (Pet. at 7-8.)

## D.  Exhaustion

Respondent concedes that petitioner has sufficiently exhausted his state remedies with re-spect to the claims raised in the instant petition, except for Claim 4.  (Answer at 3.)  He argues that Claim 4 is unexhausted and thus procedurally barred from federal habeas review.  (*Id.* at 3, 17-19.)

---

[8] In petitioner's reply, he argues that his attorney rendered ineffective assistance by not calling an alibi witness to testify. (Reply at 2, 5.)  The Court will not consider this new claim.  Not only may a petitioner not raise new claims in a reply brief, but petitioner has not exhausted such claim through the state courts.

He also argues that the five affidavits submitted to the Court to support such claim are unexhausted and procedurally defaulted.  (*Id.*)  He, nevertheless, concedes that the Court may deny relief on an unexhausted claim.  (*See id.* at 17 n.8.)

In this instance petitioner did not specifically assert a claim of actual innocence in his state application for writ of habeas corpus.  The trial court, nevertheless, appointed habeas counsel for petitioner to investigate such claim.  The trial court, furthermore, specifically ruled on such a claim when it issued its findings of fact and conclusions of law.  The Texas Court of Criminal Appeals specifically denied petitioner's state writ on the findings of the trial court.  Under these facts, the Court cannot say that petitioner failed to exhaust and thus procedurally defaulted his actual innocence claim.

Furthermore, because it appears that petitioner is entitled to no habeas relief on Claim 4, the Court may proceed to the merits of the claim.  *See* 28 U.S.C. § 2254(b)(2) (providing that the Court may deny a habeas petition on the merits, "notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State"); *Jones v. Jones*, 163 F.3d 285, 299 (5th Cir. 1998) (reaffirming pre-AEDPA law that "when, as in this case, exhaustion is not waived, courts have the 'discretion in each case [under § 2254(b)(2)] to decide whether the administration of justice would be better served by insisting on exhausting or by reaching the merits of the petition forthwith'"); *Braswell v. Dretke*, No. 3:02-CV-0342-M, 2004 WL 2583605, at *4 (N.D. Tex. Nov. 12, 2004) (findings, conclusions, and recommendation which recognizes that "the district courts may deny habeas relief for procedurally defaulted claims" in lieu of deciding the issue of procedural bar), *accepted by* 2005 WL 1058865 (N.D. Tex. May 2, 2005).

For all of these reasons, the Court proceeds to the merits of petitioner's claims, including Claim 4.

## II. APPLICABLE LAW

Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. 104-132, 110 Stat. 1217, on April 24, 1996. Title I of the Act applies to all federal petitions for habeas corpus filed on or after its effective date. *Lindh v. Murphy*, 521 U.S. 320, 326 (1997). Because petitioner filed the instant petition after its effective date, the Act applies to his petition.

Title I of AEDPA substantially changed the way federal courts handle habeas corpus actions. Under 28 U.S.C. § 2254(d), as amended by AEDPA, a state prisoner may not obtain relief

> with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim —
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

"In the context of federal habeas proceedings, a resolution (or adjudication) on the merits is a term of art that refers to whether a court's disposition of the case was substantive, as opposed to procedural." *Miller v. Johnson*, 200 F.3d 274, 281 (5th Cir. 2000). In this case, no one disputes the applicability of the AEDPA standards to petitioner's claims.

Section 2254(d)(1) concerns pure questions of law and mixed questions of law and fact. *Martin v. Cain*, 246 F.3d 471, 475 (5th Cir. 2001). A decision is contrary to clearly established federal law, within the meaning of § 2254(d)(1), "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000).

With respect to the "unreasonable application" standard, *Williams* instructs that a writ must issue "if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413; *accord Penry*

*v. Johnson*, 532 U.S. 782, 792 (2001).  Likewise under *Williams*, a state court unreasonably applies Supreme Court precedent if it "unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply."  529 U.S. at 407.  "[A] federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable."  *Id.* at 409; *accord Penry*, 532 U.S. at 793.

Section 2254(d)(2) concerns questions of fact.  *Moore v. Johnson*, 225 F.3d 495, 501 (5th Cir. 2000).  Under § 2254(d)(2), federal courts "give deference to the state court's findings unless they were 'based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.'"  *Chambers v. Johnson*, 218 F.3d 360, 363 (5th Cir. 2000).  The resolution of factual issues by the state court is presumptively correct and will not be disturbed unless the state prisoner rebuts the presumption by clear and convincing evidence.  28 U.S.C. § 2254(e)(1).

With these AEDPA standards in mind, the Court proceeds to address the merits of petitioner's claims.  Because the resolution of some claims impact the resolution of other claims, the Court will address the raised claims in an order different than presented to it.

## III.  SUPPRESSION OF EXCULPATORY EVIDENCE

In his second claim, petitioner asserts that the State suppressed evidence favorable to his defense.  (Pet. at 7.)  He contends that had the State "turned over their files" he "would have learned" that the State "possessed no evidence" linking him to the crime.  (Mem. Supp. at 3).  He further contends that the State "failed to disclose forensic and DNA evidence which would have proved that State's witness lied when making his statement" regarding petitioner.  (*Id.*)  In his answers to the MJQ, petitioner states that, although the State's witness, Claude Marshall, stated that the murder victim was killed in his car, the State provided no forensic or DNA evidence that placed petitioner in Marshall's car.  (Answer to Question 1 of MJQ.)  Petitioner further states that he had "no blood DNA of the victim" on his person or anything that he owned.  (*Id.*)  Petitioner also states that the State withheld (1) "the fact that there was a deal between Mr. Marshall and the State for

10

his testimony"; (2) the location and time of the victim's death; (3) "the fact that Mr. Marshall could not pick [petitioner] out of a photo array"; (4) the fact that petitioner was named as a co-defendant on "Mr. Marshall's indictment", but he was indicted alone on his indictment; and (5) the fact that Mr. Marshall pawned the victim's necklace the day after the murder.  (Answer to Question 2 of MJQ.)

In *Brady v. Maryland*, 373 U.S. 83 (1963), the Supreme Court held that a prosecutor must disclose evidence to a criminal defendant if that evidence is favorable to the defendant and material[9] to his guilt or punishment.  373 U.S. at 87.  "*Brady* claims involve 'the discovery, after trial of information which had been known to the prosecution but unknown to the defense.'"  *Lawrence v. Lensing*, 42 F.3d 255, 257 (5th Cir. 1994).  "There are three components of a true *Brady* violation: The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued."  *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999).  However, in *United States v. Ruiz*, 536 U.S. 622 (2002), the Supreme Court specifically considered "whether the Fifth and Sixth Amendments require federal prosecutors, before entering into a binding plea agreement with a criminal defendant, to disclose impeachment information relating to any informants or other witnesses", and found that "the Constitution does not require the Government to disclose material impeachment evidence prior to entering a plea agreement with a criminal defendant."  536 U.S. at 625, 633.

In this instance, the trial court conducted an in camera review of the State's file against petitioner, and specifically found that the file contains no exculpatory evidence and the State had a witness, Claude Marshall, who saw petitioner commit the murder.  S.H. Tr. at 50-51.  The Court defers to these findings of fact unless petitioner rebuts the presumption of correctness by clear and

---

[9] "[E]vidence is 'material' under *Brady*, and the failure to disclose it justifies setting aside a conviction, only where there exists a 'reasonable probability' that had the evidence been disclosed the result at trial would have been different."  *Wood v. Bartholomew*, 516 U.S. 1, 5 (1995).

convincing evidence. *See* 28 U.S.C. § 2254(e)(1). Petitioner has not rebutted that presumption. Petitioner's contention that he would have learned that the State had no evidence to link him to the crime is contrary to the evidence that the State had an eyewitness to the alleged offense. That petitioner questions the credibility of the eyewitness and contends that the State withheld evidence related to such credibility presents no constitutional violation. In light of *Ruiz*, the alleged failure of the government to disclose evidence related to the credibility and character of Mr. Marshall does not violate the Constitution.

Additionally, prior to *Ruiz*, the Fifth Circuit had recognized that the Supreme Court had not extended the *Brady* disclosure requirement to circumstances where the criminal defendant had pled guilty. *See Orman v. Cain*, 228 F.3d 616, 617 (5th Cir. 2000); *Matthew v. Johnson*, 201 F.3d 353, 360-64 (5th Cir. 2000). As explained in *Orman*, "*Brady* requires a prosecutor to disclose exculpatory evidence for purposes of ensuring a fair trial, a concern that is absent when a defendant waives trial and pleads guilty." 228 F.3d at 617; *accord Ruiz*, 536 U.S. at 634 (Thomas, J., concurring). "Because a *Brady* violation is defined in terms of the potential effects of undisclosed information on a judge's or jury's assessment of guilt, it follows that the failure of a prosecutor to disclose exculpatory information to an individual waiving his right to trial is not a constitutional violation." *Matthew*, 201 F.3d at 361-62. *Orman*, *Matthew*, and the concurring opinion in *Ruiz* support a finding that the *Brady* disclosure requirement simply does not apply when criminal proceedings conclude with the entry of a plea rather than a trial.

Although *Ruiz* seems to leave open the possibility of some disclosure requirement even in the context of a guilty plea, *see* 536 U.S. at 630 (suggesting that there is "critical information of which the defendant must always be aware prior to pleading guilty"), petitioner identifies no allegedly withheld information which might fall into such possibility. That the State provided no forensic or DNA evidence that connected petitioner to the crime does not appear to be critical information to a decision to plead guilty. That the State did not inform petitioner or his attorney of the location and time of the victim's death likewise does not appear to be critical information which must always

be provided to a criminal defendant.   The allegedly suppressed evidence does not exculpate petitioner.   Nor is it material under *Brady*.   The disclosure of the allegedly suppressed evidence creates no reasonable probability of escaping a guilty verdict at trial.

For all of these reasons, petitioner's suppression claim entitles him to no habeas relief in this federal action.

## IV.  ACTUAL INNOCENCE

In his fourth claim, petitioner asserts that he is actually innocent.  (Pet. at 8.)  He contends that but for the errors of his attorney, no rational juror could have found him guilty beyond a reasonable doubt.  (*Id.*)  He characterizes this claim, as a "Schlup type claim" in which his "claim of innocence does not provide a basis for relief" but instead provides a procedural mechanism for presenting claims of constitutional error.  (Mem. Supp. at 5.)

With respect to whether a petitioner may obtain federal habeas relief on a claim of actual innocence, the Fifth Circuit Court of Appeals has recognized *Townsend v. Sain*, 372 U.S. 293 (1963) as the unequivocal position of the United States Supreme Court on the matter.  *See Boyd v. Puckett*, 905 F.2d 895, 896 (5th Cir. 1990); *Armstead v. Maggio*, 720 F.2d 894, 896 (5th Cir. 1983) (per curiam).  In *Townsend*, the Court held that "the existence merely of newly discovered evidence relevant to the guilt of a state prisoner is not a ground for relief on federal habeas corpus." 372 U.S. at 317, *overruled in part on other grounds*, *Keeney v. Tamayo-Reyes*, 504 U.S. 1 (1992).  In the Fifth Circuit, actual innocence is not an independent basis for federal habeas relief.  *See, e.g., Graham v. Johnson*, 168 F.3d 762, 788 (5th Cir. 1999); *Lucas v. Johnson*, 132 F.3d 1069, 1075 (5th Cir. 1998); *Jacobs v. Scott*, 31 F.3d 1319, 1324 (5th Cir. 1994).  Petitioner thus cannot succeed on his actual innocence claim standing alone.

Petitioner, moreover, has not established that he is actually innocent.  The Supreme Court has held that to show actual innocence, a petitioner must establish:

> that it is more likely than not that no reasonable juror would have found [him] guilty beyond a reasonable doubt . . . in light of all of the evidence, including that alleged to have been illegally admitted (but with due regard to any unreliability of it) and

13

evidence tenably claimed to have been wrongly excluded or to have become available only after trial.

*Schlup v. Delo*, 513 U.S. 298, 321 (1995).

Petitioner has not met this standard. He has presented no evidence which shows that he is actually innocent. The trial court considered this claim and found no new evidence which established petitioner's innocence.

Because a claim of actual innocence is not cognizable on federal habeas corpus, and petitioner has not shown himself to be actually innocent in any event, this claim entitles him to no federal habeas relief.

## V.  VOLUNTARINESS OF GUILTY PLEA

In his first and third claims, petitioner asserts claims of involuntary plea and ineffective assistance of counsel. Petitioner connects each of his claims of ineffective assistance to the voluntariness of his plea. In his involuntary-plea claim (Claim 1), petitioner claims that his plea is involuntary because (1) it resulted from coercion from his attorney; (2) his attorney misled him with respect to the evidence that the State had against him; (3) the prosecutor suppressed evidence; and (4) his attorney failed to explain the consequences of his plea. (Pet. at 7.) In his ineffective-assistance-of-counsel claim (Claim 3), he claims that his attorney rendered ineffective assistance by (1) failing to investigate the facts of his case; (2) failing to get a ruling on filed pretrial motions; (3) coercing a guilty plea with threats; and (4) failing to communicate with him. (*Id.*)

In his supporting memorandum, petitioner asserts that, without knowing what evidence the State had against him, his attorney coerced him to plead guilty by informing him that he would receive a life sentence if he went to trial. (Mem. Supp. at 2, 4.) He argues that the advice to plead guilty was not based upon sound strategy or in his best interests, and that if counsel had properly investigated his case, he could have prepared to proceed to trial instead of coercing him to plead guilty. (*Id.* at 2, 4.) He further argues that had counsel obtained rulings on the filed pretrial

14

motions, he would not have pled guilty and would have proceeded to trial because the rulings would have revealed that the State lacked any physical evidence against him. (*Id.*)

"When a defendant pleads guilty he or she . . . forgoes not only a fair trial, but also other accompanying constitutional guarantees." *United States v. Ruiz*, 536 U.S. 622, 628 (2002); *accord Boykin v. Alabama*, 395 U.S. 238, 242-43 (1969); *Joseph v. Butler*, 838 F.2d 786, 789 (5th Cir. 1988). Because a plea relinquishes rights of the defendant, "the Constitution insists, among other things, that the defendant enter a guilty plea that is 'voluntary' and that the defendant must make related waivers 'knowing[ly], intelligent[ly], [and] with sufficient awareness of the relevant circumstances and likely consequences." *Ruiz*, 536 U.S. at 629 (quoting *Brady v. United States*, 397 U.S. 742, 748 (1970)).

With "respect to a defendant's awareness of relevant circumstances, [the Constitution] does not require complete knowledge of the relevant circumstances, but permits a court to accept a guilty plea, with its accompanying waiver of various constitutional rights, despite various forms of misapprehension under which a defendant might labor." *Id.* at 630. Although "the more information the defendant has, the more aware he is of the likely consequences of a plea, waiver, or decision, and the wiser that decision will likely be . . . the Constitution does not require the prosecutor to share all useful information with the defendant." *Id.* at 629.

"*Boykin* requires that defendants have a hearing prior to entry of the plea, at which there needs to be an affirmative showing that the decision to plead guilty was voluntarily and intelligently made." *Matthew v. Johnson*, 201 F.3d 353, 368 n.22 (5th Cir. 2000). A determination of whether a defendant understands the consequences of his guilty plea does not require a trial court to determine that the defendant has a perfect understanding of the consequences, however. The Court must only ascertain whether the defendant has a realistic or reasonable understanding of his or her plea. *See United States v. Gracia*, 983 F.2d 625, 627-28 (5th Cir. 1993) (recognizing that one of the core concerns behind Rule 11 is "a realistic understanding of the consequences of a guilty plea").

"The voluntariness of a plea is determined by 'considering all of the relevant circumstances surrounding it.'" *Fischer v. Wainwright*, 584 F.2d 691, 693 (5th Cir. 1978) (quoting *Brady*, 397 U.S. at 749). Courts considering challenges to guilty plea proceedings "have focused on three core concerns: absence of coercion, the defendant's understanding of the charges, and a realistic understanding of the consequences of a guilty plea." *Gracia*, 983 F.2d at 627-28. A realistic understanding of the consequences of a guilty plea means that the defendant knows the "the immediate and automatic consequences of that plea such as the maximum sentence length or fine." *Duke v. Cockrell*, 292 F.3d 414, 416 (5th Cir. 2002). "If a defendant understands the charges against him, understands the consequences of a guilty plea, and voluntarily chooses to plead guilty, without being coerced to do so, the guilty plea . . . will be upheld on federal review." *Frank v. Blackburn*, 646 F.2d 873, 882 (5th Cir. 1980) (*en banc*), *modified on other grounds*, 646 F.2d 902 (5th Cir. 1981).

In addition, prisoners who challenge their guilty pleas on collateral review must overcome a "strong presumption of verity" accorded "solemn declarations" made in open court. *See Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977). Prisoners must also overcome the presumption of regularity and "great weight" accorded court records. *See United States v. Abreo*, 30 F.3d 29, 32 (5th Cir. 1994) (holding that a signed, unambiguous plea agreement "is accorded great evidentiary weight" when determining whether a plea is entered voluntarily and knowingly); *Bonvillian v. Blackburn*, 780 F.2d 1248, 1252 (5th Cir. 1986) (holding that court records are "accorded great weight"); *Webster v. Estelle*, 505 F.2d 926, 929-30 (5th Cir. 1974) (holding that court records "are entitled to a presumption of regularity").

With these principles in mind, the Court examines the voluntariness of petitioner's plea in light of his allegations of suppression of evidence, ineffective assistance of counsel, and coercion.

## A.  Suppression of Evidence

Petitioner claims that his plea is involuntary because the prosecutor suppressed evidence. However, in view of the prior discussion of *United States v. Ruiz*, 536 U.S. 622 (2002), and the nature of alleged suppression of evidence in this case, the alleged suppression by the State provides no basis

16

to find petitioner's plea involuntary.  The State suppressed no evidence that had to be provided to petitioner prior to the entry of his plea even assuming that there is some "critical information of which the defendant must always be aware prior to pleading guilty."  In the absence of a violation of a duty to disclose, a withholding of evidence has no potential impact on the voluntariness of a plea.

## B.  Coerced Plea and Ineffective Assistance of Counsel

Petitioner also claims that his plea is involuntary due to coercion and ineffective assistance of counsel.  Because his claimed coercion centers upon acts and advice of his attorney, the Court considers the alleged coercion and ineffective assistance of counsel together.  The alleged coercion may render petitioner's plea involuntary only if the conduct of counsel amounts to ineffective assistance.

A guilty plea is "open to attack on the ground that counsel did not provide the defendant with 'reasonably competent advice.'"  *Cuyler v. Sullivan*, 446 U.S. 335, 344 (1980) (quoting *McMann v. Richardson*, 397 U.S. 759, 770-71 (1970)).  With respect to such pleas, "[c]ounsel is needed so that the accused may know precisely what he is doing, so that he is fully aware of the prospect of going to jail or prison, and so that he is treated fairly by the prosecution."  *Argersinger v. Hamlin*, 407 U.S. 25, 34 (1972).  Once a criminal defendant enters a knowing, intelligent, and voluntary guilty plea, all non-jurisdictional defects in the proceedings below are waived except for claims of ineffective assistance of counsel relating to the voluntariness of the plea.  *United States v. Glinsey*, 209 F.3d 386, 392 (5th Cir. 2000); *Nelson v. Hargett*, 989 F.2d 847, 850 (5th Cir. 1993); *Smith v. Estelle*, 711 F.2d 677, 682 (5th Cir. 1983).

> When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea.  He may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within the standards set forth in *McMann*.

*Tollett v. Henderson*, 411 U.S. 258, 267 (1973). In *McMann* the Supreme Court noted:

> [T]he decision to plead guilty before the evidence is in frequently involves the making of difficult judgments. All the pertinent facts normally cannot be known unless witnesses are examined and cross-examined in court. Even then the truth will often be in dispute. In the face of unavoidable uncertainty, the defendant and his counsel must make their best judgment as to the weight of the State's case. Counsel must predict how the facts, as he understands them, would be viewed by a court. . . . Waiving trial entails the inherent risk that the good-faith evaluations of a reasonably competent attorney will turn out to be mistaken either as to the facts or as to what a court's judgment might be on given facts.

397 U.S. at 769-70.

To successfully state a claim of ineffective assistance of counsel, the prisoner must demonstrate (1) that counsel's performance was deficient and (2) that the deficient performance prejudiced his or her defense. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). The *Strickland* test applies when a prisoner alleges denial of effective assistance of counsel in the context of a guilty plea. *Hill v. Lockhart*, 474 U.S. 52, 57-58 (1985). "[I]n a guilty plea scenario, a [prisoner] must prove not only that his attorney actually erred, but also that he would not have pled guilty but for the error." *See Armstead v. Scott*, 37 F.3d 202, 206 (5th Cir. 1994).

A failure to establish either prong of the *Strickland* test requires a finding that counsel's performance was constitutionally effective. *See* 466 U.S. at 696. The Court may address the prongs in any order. *Smith v. Robbins*, 528 U.S. 259, 286 n.14 (2000). To determine whether counsel's performance is constitutionally deficient, courts "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable assistance." *Strickland*, 466 U.S. at 689. Further, "[t]he reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions." *Id.* at 691.

When a prisoner challenges his plea based on ineffective assistance of counsel, the "prejudice" requirement "focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process." *Hill*, 474 U.S. at 58. To satisfy this requirement in the plea context, the prisoner "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id.* Reviewing courts must

18

consider the totality of the evidence before the finder of fact in assessing whether the result would likely have been different absent the alleged errors of counsel. *Strickland*, 466 U.S. at 695-96.

In this instance, petitioner alleges that ineffective assistance of counsel rendered his plea involuntary when his attorney (1) coerced him to plead guilty without knowing the evidence that the State had against him by informing him that he would receive a life sentence if he went to trial;[10] (2) misled him with respect to the evidence that the State had against him; (3) failed to explain the consequences of his plea; and (4) failed to obtain rulings on filed pretrial motions.[11]

### 1. Coercion and Lack of Knowledge

Petitioner's first allegation, *i.e.*, that his attorney coerced him to plead guilty without sufficient knowledge of the State's case, has two distinct components – one centered on coercion and one centered on the information known to the attorney. With respect to the latter prong of this claim, the Court recognizes that petitioner alleged in his state habeas application that his attorney told him that the State had an eyewitness who informed the police that petitioner committed the murder. Counsel thus knew that evidence against petitioner. The Court, furthermore, has already found that the State suppressed no evidence which it had a duty to disclose to petitioner. Additionally, petitioner identifies no evidence that his attorney should have otherwise known which would have impacted his decision to plead guilty. The Court finds no merit to the claim that counsel advised petitioner to plead guilty without sufficient knowledge of the State's case. Petitioner has not overcome the presumption that his attorney's conduct falls within the wide range of reasonable assistance. He has not shown that additional investigation by his attorney would have altered his decision to plead guilty.

---

[10] Because petitioner alleges a knowledge component to his coercion claim, the Court considers this claim to also encompass petitioner's claim that his attorney failed to investigate the facts of his case.

[11] Petitioner also claims that his attorney rendered ineffective assistance of counsel by failing to properly communicate with him. Because petitioner gives no specifics regarding such failure, the Court considers this claim to be encompassed by his other claims such as the alleged failure to advise him of the consequences of his plea or the failure to obtain rulings on motions filed with the trial court without his knowledge. To the extent the communication claim differs from the claims considered in this section, the claim fails as conclusory, and the Court will not further consider it.

As for the coercion prong of this claim, the Court notes that because petitioner had two prior felony offenses, the potential punishment for his murder offense ranged from twenty-five years to life imprisonment. Counsel's prediction regarding the outcome at trial is thus not beyond the realm of possibilities. Additionally, in view of petitioner's plea, it is impossible to definitively ascertain the accuracy of such prediction. Petitioner has not overcome the presumption that his attorney's advice falls within the wide range of reasonable assistance. An erroneous estimation of a potential sentence neither necessarily indicates ineffective assistance nor necessarily renders a guilty plea involuntary. See United States v. Stumpf, 827 F.2d 1027, 1030 (5th Cir. 1987) ("a defendant's reliance on his attorney's erroneous prediction of leniency is not sufficient to render a guilty plea involuntary"); Beckham v. Wainwright, 639 F.2d 262, 265 (5th Cir. 1981) (holding that "an erroneous estimate by counsel as to the length of sentence" is not "necessarily indicative of ineffective assistance"); Johnson v. Massey, 516 F.2d 1001, 1002 (5th Cir. 1975) (holding that an attorney's "good faith but erroneous prediction of a sentence . . . does not render the guilty plea involuntary"). The Court here cannot even say that counsel's estimation is erroneous. Consequently, the estimation certainly is not indicative of ineffective assistance or an involuntary plea.

In any event, even if the Court assumes for purposes of this recommendation that the pre-diction of counsel constitutes deficient performance, petitioner must show a reasonable probability that, but for that deficiency of counsel, he would not have pleaded guilty and would have insisted on going to trial. See Stumpf, 827 F.2d at 1030 (holding that even when an attorney erroneously estimates his client's potential sentence, the defendant must satisfy the prejudice requirement). Peti-tioner has not made that showing. As part of his plea, petitioner was assured that he would receive a twenty-five year sentence – the statutory minimum sentence given his two prior felony convictions. That his attorney predicted a life sentence should petitioner proceed to trial does not alter the fact that petitioner received the statutory minimum sentence for his offense. Petitioner knew that the State had an eyewitness to the murder who was willing to testify against him. Petitioner also knew that should he be convicted he faced a range of punishment from twenty-five years to life. In light

20

of these facts, the Court finds no reasonable probability that but for counsel's prediction of a life sentence, petitioner would not have pleaded guilty. Petitioner has not affirmatively shown otherwise.

### 2. Misleading Information

Petitioner also alleges that his attorney provided misleading information which renders his plea involuntary. However, petitioner provides nothing to support the allegation. His state habeas application provides no additional detail or support for the allegation. Making such a bald allegation, without more, is insufficient to find that the attorney rendered deficient representation. Petitioner has not overcome the presumption that his attorney's conduct falls within the wide range of reasonable assistance. "[C]onclusory allegations of ineffective assistance of counsel do not raise a constitutional issue in a federal habeas proceeding." *Miller v. Johnson*, 200 F.3d 274, 282 (5th Cir. 2000).

### 3. Failure to Explain Consequences of Plea

Petitioner further alleges that his attorney failed to explain the consequences of his plea, thus rendering his plea involuntary. However, even assuming that counsel failed to explain the consequences of petitioner's plea, such failure was cured by the written admonitions in the plea agreement document and the trial court's oral admonitions prior to accepting such plea. Petitioner was thus not prejudiced by the alleged failure.

### 4. Failure to Obtain Rulings on Pretrial Motions

Petitioner lastly alleges that his attorney failed to obtain rulings on filed pretrial motions. He argues that had counsel obtained rulings on the motions, he would not have pled guilty. Because petitioner did not know about the filed motions, *see* S.H. Tr. at 8 (arguing in his state application for writ of habeas corpus that had he "known that [his attorney] filed the motions", he would not have entered his plea); (Answer to Question 3 of MJQ (stating that had he known of the motions he would have waited for a ruling "or maybe not even agreed to plea bargain at all")), petitioner essentially argues that counsel should have waited for a ruling on the filed motions before advising him to plead guilty. The Court, however, finds no deficiency of counsel in advising a guilty plea

merely because motions remain pending before the trial court. Even if such motions may be routinely granted, it is entirely speculative to think that information will be discovered to alter an otherwise reasonable decision to plead guilty. There is also no guarantee that a plea offer will remain available while the defendant awaits a ruling on pending motions.

In this instance, petitioner accepted the statutory minimum sentence for the charged offense after enhancement based on his two prior felony convictions. Unless he believed he could obtain an acquittal, he could not have received a more lenient sentence had he gone to trial. Had he believed in his innocence, he would not have accepted the twenty-five year sentence. The acceptance of the plea speaks volumes, and the mere fact that motions were pending which might have given petitioner more information on which to make his plea decision does not make his plea involuntary. Petitioner presents nothing to show that he would have insisted on waiting for a ruling on the pending motions had he known about them. The Court has already found that counsel did not coerce petitioner into pleading guilty. It now finds that counsel was not deficient in advising a plea without waiting for a ruling on pending motions.

## C. Conclusion Regarding Voluntariness of Plea

For the foregoing reasons, the Court finds no basis to find petitioner's plea involuntary. He has shown no suppression of evidence, ineffective assistance of counsel, or coercion that rendered his plea involuntary. He has not overcome the presumption accorded his solemn declarations made in open court or the presumption of regularity attributed to court records, such as his plea agreement and accompanying acknowledgments and statements made therein based upon his signature. It appears that petitioner and his attorney made their best judgment and petitioner voluntarily chose to plead guilty.

## VI.  STATE CONSIDERATION OF CLAIMS

Petitioner raised each of his federal claims in his state writ. The Texas Court of Criminal Appeals denied that writ on the findings of the trial court, and thus adjudicated the claims on the merits. The decision to deny habeas relief at the state level is consistent with applicable Supreme

Court precedent.  The decision involved no unreasonable application of Supreme Court precedent. The adjudication of the claims did not result in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented to the state court.  Under applicable Supreme Court standards and the AEDPA standards, petitioner is entitled to no habeas relief on the claims raised in the instant petition.

## VII.  EVIDENTIARY HEARING

Upon review of the pleadings filed herein and the proceedings held in state court as reflected in the state-court records, an evidentiary hearing appears unnecessary.

## IV. RECOMMENDATION

For the foregoing reasons, the undersigned Magistrate Judge **RECOMMENDS** that the Court **DENY** with prejudice the request for habeas corpus relief brought pursuant to 28 U.S.C. § 2254.

**SIGNED this 7th day of April, 2007.**

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

The United States District Clerk shall serve a copy of these findings, conclusions, and recommendation on all parties by mailing a copy to each of them.  Pursuant to 28 U.S.C. § 636(b)(1), any party who desires to object to these findings, conclusions and recommendation must file and serve written objections within ten days after being served with a copy.  A party filing objections must specifically identify those findings, conclusions, or recommendation to which objections are being made. The District Court need not consider frivolous, conclusory or general objections.  Failure to file written objections to the proposed findings, conclusions, and recommendation within ten days after being served with a copy shall bar the aggrieved party from appealing the factual findings and legal conclusions of the Magistrate Judge that are accepted by the District Court, except upon grounds of plain error.  *Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (*en banc*).

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE